Kimberly **MILLER**, Plaintiff,

v.

**AT & T, a foreign corporation,**
**Defendant.**

No. Civ.A. 2:98–0808.

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 31, 2000.

Mike Kelly, Charleston, WV, Lonnie C. Simmons, Charleston, WV, for plaintiff.

William E. Robinson, Robinson & McElwee, Charleston, WV, Michael A. Kawash, Robinson & McElwee, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

On August 9, 1999, this Court issued a memorandum opinion and order granting plaintiff Kimberly Miller's motion for par-

tial summary judgment as to liability and denying defendant AT & T's motion for summary judgment as to liability and damages. *Miller v. AT & T*, 60 F.Supp.2d 574 (S.D.W.Va.1999). The Court found that AT & T violated 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act (FMLA) when it terminated Miller's employment with AT & T on March 20, 1997. *Id.* at 579–80. The Court then entered a second amended scheduling order setting a jury trial for September 28, 1999 to decide the damages issue. Subsequently, the parties agreed to submit stipulations and proposed findings of fact and conclusions of law.

Having reviewed the joint stipulations and proposed findings of fact and conclusions of law, the issues for resolution are: (1) whether an award of back pay should be limited to the time period March 20, 1997 to May 29, 1997 under the after-acquired evidence doctrine, or in the alternative, limited to the time period March 20, 1997 to August 31, 1997 because of Miller's alleged failure to mitigate her damages; (2) whether Miller is entitled to front pay because she no longer desires reinstatement to her former position at AT & T; and (3) what, if any, amount of liquidated damages should Miller be awarded pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii). The Court now issues the following findings of fact and conclusions of law on the damages portion of this action

### I. Findings of Fact

Based on the stipulations of the parties, the Court finds the facts as follows. Miller was employed by AT & T as an account representative at its Customer Sales and Service Center in Charleston, West Virginia from 1990 until her termination. (*Joint Stipulations of Fact* at ¶ 1.) On March 20, 1997, Miller's employment was terminated because of excessive absences. (*Id.* at ¶ 25.)

AT & T's attendance policy provides that absences arising from illness or dis-

ability are "chargeable" against an employee in determining whether the employee's attendance is satisfactory, unless the illness or disability is covered by the FMLA. (*Id.* at ¶ 3.) AT & T initiates a program of progressive discipline to deal with employees whose attendance is deemed unsatisfactory. (*Id.* at ¶ 4.) On June 25, 1996, after receiving minor forms of progressive discipline earlier in the year, Miller received a "final letter of warning" that cautioned, "A continuation of unsatisfactory attendance may result in disciplinary action, up to and including dismissal. This means that you may be dismissed on your next occurrence." (*Id.* at ¶ 14.)

On December 26, 1996, Miller started to feel ill at work. (*Id.* at ¶ 16.) Still feeling sick, she stayed at home the next day before seeing Dr. T. Donald Sommerville on December 28, at which time her condition was diagnosed as "Influenza A." (*Id.*) Under doctor's orders, Miller remained at home until January 2, 1997. (*Id.*); *see also Miller*, 60 F.Supp.2d at 576. After returning to work, she submitted FMLA forms to AT & T requesting a covered leave of absence from December 26, 1996 through January 1, 1997, the period she was absent from work as a result of the flu.[1] (*Joint Stipulations of Fact* at ¶ 17.) After reviewing the forms, AT & T, through Maxine M. Condie, R.N., division manager within AT & T's Health Affairs organization, concluded on March 18, 1997, that Miller's absences were not covered by the FMLA. (*Id.* at ¶¶ 19–20.) Two days later, AT & T terminated Miller's employ-

ment because of excessive absences.[2] (*Id.* at ¶ 25.)

In addition to the flu-related absences, Miller was absent on January 21 and 31, 1997. (*Id.* at ¶ 27.) Before her termination, Miller applied to have these two absences covered by the FMLA. (*Id.*) The outcome of those applications, however, was still pending as of the date of her termination. (*Id.*) By May 29, 1997, AT & T determined that the two absences were not covered by the FMLA, and that they were violations of Miller's final letter of warning that would have resulted in her termination if she were still employed by AT & T.[3] (*Id.* at ¶ 31.)

With respect to her January 21, 1997 absence, Miller submitted FMLA forms requesting intermittent leave from January 21, 1997 through April 21, 1997 to transport her husband, who suffered from eye problems, to eye appointments with his physician. (*Id.* at ¶ 28.) During its review of the application, AT & T's Health Affairs organization contacted her husband's physician, Dr. Francke, regarding the appointments. (*Id.*) In May 1997—two months after Miller's termination by AT & T—Dr. Francke's office provided a list to AT & T of the dates that Dr. Francke examined Miller's husband. (*Id.*) January 21, 1997 was not included on the list. (*Id.*)[4] Over two years later (apparently during the course of discovery in the present litigation), Dr. Charles Moore submitted an affidavit stating that he examined Miller's husband on January 21, 1997, and

---

**1.** AT & T has instituted an elaborate procedure for employees to follow when they seek to have an absence covered by the FMLA. That procedure is discussed in this Court's opinion on the liability issue. *See Miller*, 60 F.Supp.2d at 576.

**2.** The flu-related absences were the primary subject of the Court's August 9, 1999 memorandum opinion and order, in which the Court determined that AT & T abridged Miller's rights under the FMLA when it terminated her employment on account of the absences. *Miller*, 60 F.Supp.2d at 579–80.

**3.** AT & T first raised the two additional absences as an argument in support of its motion for summary judgment on the damages issue. The Court denied AT & T's motion, finding that there were genuine issues of material fact regarding whether the two additional absences were covered by the FMLA. *Miller*, 60 F.Supp.2d at 580–81.

**4.** There is no evidence that AT & T ever attempted to notify Miller of any deficiencies in her application or offered her an opportunity to explain the discrepancy until the present litigation.

that he advised him not to drive that day because his pupils were dilated. (*Id.* at ¶ 29.) This was the first time that AT & T became aware that Miller's husband had visited another physician on account of his eye problems. (*Id.*)

Miller's absence on January 31, 1997 related to medical injections that she received from her doctor. (*Id.* at ¶ 30.) Prior to the absence, Miller had already applied for intermittent leave to receive the medical injections, and was granted a total of four days of intermittent leave—three days to receive injections and one day for a follow-up examination. (*Id.*) Although January 31, 1997 was within the time period of intermittent leave requested by Miller, that date was not one of the four specific FMLA-approved absences. (*Id.*) Instead, that absence resulted from side effects arising from one of the injections. (*Id.*) Miller never submitted FMLA forms seeking coverage for that specific date, and AT & T never inquired of Miller regarding that absence. (*Id.*)

After her termination from AT & T, Miller applied for various positions, including ones with Telespectrum Worldwide, Bell Atlantic, the Supreme Court of Appeals of West Virginia, the United States District Court, Assessment Corporation, and Putnam County Bank. (*Id.* at ¶ 36.) However, she received no offers of employment. (*Id.*) After months of searching for employment without success, Miller enrolled as a full-time student at West Virginia University Institute of Technology. (*Id.* at ¶ 38.) While a student, Miller continued to search for part-time employment, and ultimately accepted work as a part-time employee at Cracker Barrel from July 1998 to January 1999. (*Id.* at ¶ 37.)

After completing her education, on August 1, 1999, Miller accepted a full-time job as an operating room technician at St. Francis Hospital, in Charleston. (*Id.* at ¶ 38.) At present, she continues to work at St. Francis and is paid $11.00 per hour. (*Id.*)

## II. Conclusions of Law and Discussion

A plaintiff who proves a successful claim under the FMLA is entitled to receive damages in the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I), plus "interest ... calculated at the prevailing rate." *Id.* at § 2617(a)(1)(A)(ii). In addition, the plaintiff is entitled to "an additional amount as liquidated damages equal to the sum of [the above damages] ... except that if an employer ... proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation [of the FMLA]," the court has the discretion to reduce or eliminate the award of liquidated damages. *Id.* at § 2617(a)(1)(A)(iii). Finally, the court has the authority to award a successful FMLA plaintiff any "equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* at § 2617(a)(1)(B); *see also Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir.1998).

Pursuant to 29 U.S.C. § 2617, Miller requests the following in damages: (1) back pay from the period March 20, 1997 to the date of entry of final judgment by the Court; (2) five years of front pay; and (3) liquidated damages equal to the amount of back pay, front pay, and interest. AT & T argues that back pay should be limited, that front pay is inappropriate, and that the Court should use its discretion to deny Miller an award of liquidated damages. The Court addresses each remedy in turn.

### A. Back Pay

The following stipulations were agreed to with respect to Miller's back pay:

33. During the period from March 20, 1997 to May 29, 1997, Miller earned $3,147.00 less than if she had remained employed by AT & T.

34. During the period from March 20, 1997 to September 28, 1999, Miller earned $54,055.00 less than if she had remained employed by AT & T.

35. Miller will earn $29.54 less per day, from September 28 until the date the Court enters judgment, than if she remained employed by AT & T.

(*Joint Stipulations of Fact* at ¶¶ 33–35.)

AT & T argues that back pay should be limited to the period March 20, 1997 to May 29, 1997 under the after-acquired evidence doctrine. As stipulated to by the parties, by May 29, 1997, AT & T determined that Miller's additional absences on January 21 and 31, 1997 were not covered by the FMLA. As Miller remained under a final letter of warning, the additional absences would have resulted in the termination of her employment on May 29. In the alternative, AT & T seeks to limit back pay to the period March 20, 1997 to August 31, 1997. According to AT & T, Miller failed to mitigate her damages when she returned to school on August 31, 1997 through May 1999, instead of seeking full-time employment.

1. After–Acquired Evidence Doctrine

In *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362–63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the United States Supreme Court adopted the "after-acquired evidence doctrine" in cases arising under the Age Discrimination in Employment Act and similar statutes.[5] Under the "after-acquired evidence doctrine," the employer argues that it has acquired evidence since the time of the earlier wrongful "action that, had it known it at the time, would have led it to do exactly what it did, except for a legitimate reason rather than an illegal one." *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1237 (4th Cir.1995). In order to successfully invoke the doctrine, the employer "must first establish that the wrongdoing was of such severity that the employee in fact would

have been terminated on those grounds alone if the employer had known it at the time of the discharge." *McKennon*, 513 U.S. at 362–63, 115 S.Ct. 879; *see also Russell*, 65 F.3d at 1238. The "general rule" when an employer meets that burden is that "neither reinstatement nor front pay is an appropriate remedy." *McKennon*, 513 U.S. at 361–62, 115 S.Ct. 879. With respect to back pay, "[t]he beginning point in the trial court's formulation of a remedy should be calculation of back pay from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 362, 115 S.Ct. 879.

As a threshold matter, Miller argues that the after-acquired evidence doctrine is not applicable because AT & T was aware of her additional January 1997 absences at the time of her termination, and therefore, the information was not acquired after the discharge. AT & T responds by pointing to Miller's stipulation that:

> Miller also applied for FMLA coverage for those absences [the January 21 and 31, 1997 absences], *the approval or denial of which was still pending as of the date of her termination on March 20, 1997.* As a result, it was then unknown if those absences were "chargeable" under the attendance policy, and neither absence was therefore considered by AT & T as part of the termination decision.

(*Joint Stipulations of Fact* at ¶ 27 (emphasis added).) According to AT & T, the after-acquired evidence doctrine is not the fact that she incurred additional January absences, which AT & T concedes it was well aware of at the time of her termination on March 20, 1997. Instead, AT & T argues that the after-acquired evidence is the final determination that the absences were not covered by the FMLA, which the parties agree was not made until May 29, 1997, and only after proceeding

5. Because of the relatively recent enactment of the FMLA, and its similarities to other employment statutes, the Court has relied on

authority that arises under comparable employment statutes throughout the opinion.

through AT & T's standard process of reviewing FMLA request forms.

■ The rationale of the after-acquired evidence doctrine is not applicable to Miller's situation. In the typical after-acquired evidence case, at the time of termination, the employer is not aware of additional conduct of the employee that would potentially provide an independent reason to terminate the employee. *See, e.g., McKennon,* 513 U.S. at 354–55, 115 S.Ct. 879 (after employee was wrongfully terminated, employer discovered evidence that employee had misappropriated several confidential, financial documents of the employer); *Russell,* 65 F.3d at 1240 (after termination of employee, employer discovered that employee had made several misrepresentations in her resume and application for employment). Under that scenario, the employer does not have in its possession any additional facts or circumstances upon which to base its termination of the employee. In sharp contrast, AT & T was aware of Miller's additional absences at the time of her termination. It therefore had the ability to evaluate that conduct as part of an overall decision to terminate her employment.

The decision to terminate an employee has grave consequences for both the employee and the employer. Before making the decision to terminate an employee, an employer should evaluate all of the information pertaining to an employee that it has in its possession. In the absence of emergency time pressures, it is not unreasonable to require the employer to investigate all known information regarding the employee prior to termination. In particular, the employer should be required to make a determination regarding all potentially adverse information, such as additional absences that may result in termination because of unsatisfactory at-

tendance. After an employee has been terminated, there is no legitimate purpose in continuing to evaluate the employee. The only purpose behind post-termination, piece-meal determinations regarding an employee's conduct, is to limit the damages of the employer in the event of an employment lawsuit.

■ Nonetheless, even if the after-acquired evidence doctrine applies to this case, AT & T is not able to prove that Miller engaged in wrongdoing—in this case, excessive absences—of such severity that it would have resulted in her termination. *McKennon,* 513 U.S. at 362–63, 115 S.Ct. 879; *see also Russell,* 65 F.3d at 1238. Indeed, Miller did not engage in any "wrongdoing" at all because the two additional absences should have been approved under the FMLA.

According to the joint stipulations of fact, Miller was absent from work on January 21, 1997 because her husband, who suffered from eye problems and required eye surgery, was referred to a specialist in Morgantown, West Virginia, and his physician had advised that someone drive him because his vision would be affected by the testing.[6] Six days later, Miller submitted FMLA forms requesting intermittent leave to transport her husband to eye appointments for the period including January 21 (the date that she was absent from work) through April 21, 1997. The forms listed Dr. Francke as Mr. Miller's physician, but did not state that Mr. Miller also saw a specialist in Morgantown. After her termination, AT & T contacted Dr. Francke, who provided a list of dates on which he had examined Mr. Miller. Because January 21 was not one of the dates listed, AT & T jumped to the conclusion that it was not covered by the FMLA, without giving Miller an opportunity to explain the discrepancy. However, since January 21 was the first day of the inter-

**6.** 29 U.S.C. § 2612 provides that an eligible employee shall be entitled to leave "[i]n order to care for the spouse ... of the employee, if such spouse ... has a serious health condi-

tion." AT & T does not dispute that her husband's eye problems constituted a serious health condition under the FMLA.

mittent leave requested and Miller's request was submitted after that date, it seems highly improbable that AT & T would have terminated her employment without first providing Miller an opportunity to explain the absence and discrepancy in the forms.

■ Likewise, with respect to the January 31, 1997 absence, AT & T concluded that Miller's absence on that date was not covered by the FMLA because she did not request that specific date as part of her overall request for intermittent leave to receive medical injections. Significantly, however, January 31 fell squarely within the time period of Miller's request for intermittent leave from January 30, 1997 through April 30, 1997. (See Joint Stipulations of Fact, Exhibit Q.) Furthermore, her FMLA forms explicitly stated that in addition to the injections, she might also have to miss work because of pain arising from the injections. (Id.) Miller's physician, Dr. Bernard Luby, stated in an affidavit that Miller received an injection on January 30, and that it was possible for a patient to feel sick the day following an injection. (Id., Exhibit R.) If Miller remained employed at AT & T, it is highly improbable that she would have been terminated for that absence without first being given an opportunity to explain the absence or without further inquiry by AT & T.

In support of its position, AT & T cites to the Code of Federal Regulations, which states that "[t]he employer's designation decision must be based only on information received by the employee or the employee's spokesperson." 29 C.F.R. § 825.208(a); see also Albert v. Runyon, 6 F.Supp.2d 57, 61 (D.Mass.1998). Nothing in that general rule, however, indicates that AT & T is required to turn a blind-eye to the apparent implications of the evidence that it possesses. For example, anything more than a superficial review and investigation of Miller's FMLA application forms would have shown that there was a plausible explanation for the deficiencies and discrepancies in the applications. Accordingly, the Court finds that the two additional January absences should have been approved under the FMLA.

The Court is cognizant of the fact that AT & T's determinations regarding the additional absences were made after Miller's termination. Even if the after-acquired evidence doctrine applies, it is not intended to be used as a fishing expedition by employers to find wrongful conduct on the part of their terminated employees for the purpose of limiting their damages. Moreover, because Miller was no longer employed by AT & T during the investigation and determination regarding the additional absences, she was never given an opportunity to explain any discrepancies or to provide additional relevant information. As there were simple explanations for the absences that make it clear that they should have been FMLA-approved, the Court concludes that the after-acquired evidence doctrine does not limit Miller's back pay to May 29, 1997.

2. Mitigation of Damages

A successful FMLA plaintiff is generally entitled to back pay. See 29 U.S.C. § 2617. However, "[a]n improperly dismissed employee may not remain idle and recover lost wages from the date of discharge. The employee must make a reasonable effort to find other suitable employment." Edwards v. School Bd. of the City of Norton, Virginia, 658 F.2d 951, 956 (4th Cir.1981). Thus, the district court may limit the employee's back pay if the employer comes forward with evidence that the plaintiff did not exert reasonable efforts to mitigate her damages. Ford Motor Co. v. EEOC, 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir.1995). There are limits to the duty to mitigate: to satisfy the duty to mitigate, "the unemployed ... need not go into another line of work, accept a demotion, or take a demeaning position." Ford, 458 U.S. at 231, 102 S.Ct. 3057. The employer has the burden of proving that the

employee failed to exert reasonable efforts to mitigate her damages. *Edwards,* 658 F.2d at 956.

AT & T argues that Miller effectively removed herself from the job market and failed to mitigate her damages by enrolling as a full-time student at West Virginia Institute of Technology from August 31, 1997 to May 1999. Accordingly, AT & T contends that Miller's back pay must be limited to the period March 20, 1997 to August 31, 1997. In support of its argument, AT & T cites to a line of cases that hold that an individual who abandons her willingness to search for and return to work and opts instead to attend school during the back pay period generally does not meet her duty to mitigate damages during the time she is in school. *See, e.g., Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 268 (10th Cir.1975) ("[W]hen an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a back pay award for the period while attending school . . . would be like receiving a double benefit"); *see also Floca v. Homcare Health Services, Inc.,* 845 F.2d 108, 113 (5th Cir.1988) ("The time a person spends in school learning a new career is an investment for which future benefits are expected. The student is compensated for the time in school by the opportunity for future earnings in the new career and thus suffers no damages during that period"); *Miller v. Marsh,* 766 F.2d 490, 492 (11th Cir.1985); *Washington v. The Kroger Co.,* 671 F.2d 1072, 1079 (8th Cir.1982). There are several cases, however, which hold that one who chooses to attend school after diligent efforts to find work have proven to be unsuccessful, or who continues to search for work while enrolled in school, satisfies the obligation to mitigate. *See, e.g., Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1275–76 (4th Cir.1985); *see also Dailey v. Societe Generale,* 108 F.3d 451, 455–57 (2d Cir.1997); *Smith v. American Service Co.,* 796 F.2d 1430, 1432 (11th Cir. 1986); *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1307–09 (7th Cir.1984).

The choice between school and work presents an employee with a difficult decision. The employee can continue what has been a fruitless search for comparable employment, and hope that her employment claims will be successful. Or, the employee can go to school in an attempt to gain an education and marketable skills, risking the loss of back pay if her employment claims prove to be unsuccessful. The difficulty is exacerbated by the delay inherent in the deliberative processes of the judicial system. If the employee continues the fruitless search for employment and then loses the employment claim, she may have lost months or years in which she could have obtained marketable skills by returning to school. Because it is the employer's violation of the law that puts such an employee in this predicament, the former employee should be given some latitude by the courts in reviewing her post-termination actions.

In the present case, Miller opted to attend school after five months of diligent efforts to find suitable employment proved fruitless. She continued to search for part-time employment while enrolled in school. The cases cited by AT & T are distinguishable. Those cases involved "circumstances either where a plaintiff voluntarily absents herself from an active job market because she believes her ultimate earning potential will be enhanced with the benefit of further education or where the plaintiff completely fails to seek alternate employment prior to enrolling in school." *Dailey,* 108 F.3d at 457. It is also reasonable to conclude that Miller returned to school to obtain marketable skills that allowed her to reenter the job market, not to "reap greater future earnings" as in *Taylor, supra.* Indeed, her present earnings are less than in her former position with AT & T.

■ The Court finds that Miller adequately attempted to mitigate her damages and that an award of back pay should not be limited as a result of her enrollment in

school. Although her initial mitigation efforts proved unsuccessful, reasonable effort is all that is required, not ultimate success. *See Dailey,* 108 F.3d at 456; *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983).

The Court **ORDERS** back pay awarded from the time period March 20, 1997 to the date of entry of this order, plus interest at the prevailing rate. The Court **DIRECTS** counsel to submit a joint calculation of the amount of back pay to which Miller is entitled, which will be included in the final judgment order to be entered forthwith. The calculation should be consistent with this Court's findings and conclusions of law and with *Joint Stipulations of Fact* ¶¶ 34–35.[7]

**B. Reinstatement Versus Front Pay**

Throughout the litigation, Miller has sought reinstatement to her former position with AT & T. AT & T has recently offered to reinstate Miller pending an appeal to the Fourth Circuit Court of Appeals. However, she now states that she no longer seeks reinstatement. Instead, Miller now prefers to continue working as an operating room technician at St. Francis Hospital, and to receive five years worth of front pay to make up the difference between what she is presently earning and what she would earn if employed by AT & T over the next five years.

The FMLA permits a trial court, in its discretion, to grant an amount of future earnings, or front pay, in lieu of reinstatement. *See* 29 U.S.C. § 2617; *see also Cline,* 144 F.3d at 307. Because of the entirely speculative nature of front pay and the real possibility that a successful plaintiff will reap a "windfall," courts have consistently held that reinstatement is the presumptively favored equitable remedy. *See, e.g, Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1422 (4th Cir.1991); *see also Roush v. KFC Nat'l Management Co.,* 10 F.3d

392, 398 (6th Cir.1993); *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1370 (7th Cir.1992). In *Duke,* the Fourth Circuit stated

While an employer-employee relationship may not be fully restored to its pre-violation condition by reinstatement, the chances of a proper restoration are greater than by guessing, with an award of front pay, whether and for how long a plaintiff will work in the future. Under one scenario of future events, the plaintiff could be left without a remedy and under another the plaintiff could end up with a windfall. In either case, an injustice is done to one party or the other.

*Duke,* 928 F.2d at 1423.

Although reinstatement is the preferred remedy, it is not always required. *Id.* at 1423; *McKnight,* 973 F.2d at 1370. There are circumstances in which reinstatement is simply inappropriate or not feasible. The primary circumstance in which reinstatement has been found inappropriate is when the employer-employee relationship is so hostile that there is no longer any possibility of a productive and amicable relationship between the parties. *Duke,* 928 F.2d at 1423. This hostility can arise from the nature of the termination itself or from the course of litigation. Under these circumstances, front pay may be awarded, but "[b]ecause of the potential for windfall, however, its use must be tempered." *Id.* at 1424.

Miller does not argue that the relationship between the parties has become so hostile that she can no longer be a productive employee of AT & T. Indeed, there is no evidence of any animosity or hostility between the parties. Instead, Miller argues that her career goals have recently changed since returning to school and as a result, reinstatement is now inappropriate.

■ Miller is certainly entitled to a change of career. However, her new ca-

7. *Joint Stipulations of Fact* ¶ 35 states that "Miller will earn $29.54 less per day, from September 28 [1999] until the date the Court enters judgment, than if she remained employed by AT & T." The Court is uncertain whether that stipulation means business days, or all days between September 28, 1999 and entry of judgment.

reer and lifestyle choice should not be subsidized by AT & T. A successful FMLA plaintiff cannot simply reevaluate her career goals, accept a lesser paying job, and receive the same amount of compensation as before through front pay. The possibilities for abuse are patent and the Court finds that front pay is not appropriate in such circumstances.

The Court **ORDERS** reinstatement. Of course, it remains Miller's choice whether to accept this remedy.

### C. Liquidated Damages

A plaintiff who makes out a successful claim under the FMLA is generally entitled to an award of liquidated damages, which is an amount equal to the amount of back pay plus interest at the prevailing rate. 29 U.S.C. § 2617(a)(1)(A)(iii). The district court, in its discretion, can reduce or eliminate the amount of liquidated damages if the employer proves that it acted in good faith and had reasonable grounds for taking the action that constituted the violation of the FMLA. *Id.* The defendant bears the burden of proving that it acted in good faith and upon reasonable grounds. *See Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 548 (4th Cir.1998); *Mayhew v. Wells,* 125 F.3d 216, 221 (4th Cir.1997).

The Court finds that AT & T has met its burden of proving that it acted in good faith and had reasonable grounds for believing that its actions were proper. AT & T's erroneous conclusion that Miller's flu-related absences were not covered by the FMLA was based primarily on Ms. Condie's determination that the flu is not a "serious health condition." In support of that position, Ms. Condie relied upon the language of 29 C.F.R. § 825.114(c), which states in pertinent part, "Ordinarily, unless complications arise ... the flu ... etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.114(c); *see also Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1036 (M.D.Tenn.1995). This Court disagreed, finding that the FMLA statutory

scheme was better served by allowing medical doctors to decide whether a particular case of the flu qualifies as a serious health condition, and finding that Miller had offered sufficient certification that her illness rose to that level. *Miller,* 60 F.Supp.2d at 579–80. Although the Court reached an opposite conclusion, AT & T acted in good faith and had reasonable grounds for believing that the FMLA did not apply to Miller's absences.

Having found that AT & T has met its burden of proof, the Court finds that liquidated damages are not appropriate in this case.

### III. Conclusion

For the reasons set forth above, the Court **ORDERS** back pay, plus interest at the prevailing rate. The Court does not award to Miller front pay or liquidated damages. As discussed at page 14 of this order, counsel shall submit a calculation of the amount of back pay that will be included in the judgment order. In addition, the Court **ORDERS** that Miller be reinstated to her previous position of employment with AT & T.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.