STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0073

JOSEPH SOULIER

VERSUS

HOOD CONTAINER OF LOUISIANA, L.L.C.
AND MITCHELL HARRELL

*Judgment Rendered:*    SEP 2 7 2019

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C648814

The Honorable R. Michael Caldwell, Judge Presiding

* * * * * * * *

| | |
|---|---|
| S. Mark Klyza | Counsel for Defendant/Appellant/ |
| Alexander C. Landin | Cross-Appellee |
| New Orleans, Louisiana | Hood Container of Louisiana, L.L.C. |
| | |
| Charlotte C. McDaniel McGehee | Counsel for Plaintiff/Appellee/ |
| Baton Rouge, Louisiana | Cross-Appellant |
| | Joseph Soulier |

* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

McDonald, J. Concurs with Reasons,

Chutz, J - Concurs w/o Reasons

**THERIOT, J.**

This suit arises from the termination of an employee while he was on Family and Medical Leave Act[1] ("FMLA") leave. After a trial on the merits, both the former employer and the former employee appealed. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Joseph Soulier, a United States Army combat veteran and former member of the Louisiana National Guard,[2] was employed by Hood Container of Louisiana, L.L.C ("Hood") as a mechanic at its facility in St. Francisville, Louisiana since September 2, 2014.[3] On September 11, 2015, Soulier was diagnosed with post-traumatic stress disorder (PTSD)[4] related to his prior military service. At this time, Michelle Scott, Hood's Human Resources Manager, provided him with the necessary paperwork to apply for FMLA leave. Soulier returned the completed paperwork to Scott on January 25, 2016, and he was approved for intermittent FMLA leave on January 26, 2016.[5] The FMLA certification stated that Soulier would need to miss work on an intermittent basis for PTSD flare-ups, which generally occurred in response to psychological stressors.

On April 19, 2016, Soulier, who was in the midst of a divorce and custody dispute, allegedly threatened to kill his ex-wife and himself. The police were notified of the threat, and Soulier was placed under a 72-hour hold at Our Lady of the Lake Regional Medical Center in Baton Rouge. Due to the hospitalization, Soulier did not report to work on April 20, 2016. Soulier's brother Jeremy, who

---

[1] 29 U.S.C. § 2601, et seq.

[2] Soulier was honorably discharged from the Louisiana National Guard in 2006 and from the United States Army in 2008.

[3] Soulier had previously been employed at the Hood facility (under previous ownership) beginning in 2010, but voluntarily resigned in 2013 in order to take another job.

[4] Soulier was also diagnosed with a traumatic brain injury related to his military service.

[5] Although Soulier's petition states that he applied for and was granted FMLA leave on September 15, 2015, this is incorrect. He originally received the FMLA paperwork from Hood around September 16, 2015, but decided not to complete it, allegedly on the advice of both his doctor and his supervisor. Soulier turned in his FMLA paperwork in January 2016.

also worked for Hood, informed Soulier's supervisor, Mitchell Harrell, of the situation and told him that Soulier had been hospitalized and would be absent from work. Harrell told Jeremy that he would inform Scott, the Human Resources Manager, of the situation, but that Jeremy needed to speak to her also. That same day, Harrell told Scott about the threat that Jeremy had reported to him and that Soulier was being held at an undisclosed facility for 72 hours. Harrell also told Scott that he had instructed Jeremy to contact Scott regarding his brother's absence. Jeremy denied this, insisting that Harrell told him he would speak to Scott for him. Nevertheless, it is undisputed that Jeremy and Scott never discussed Soulier's absence.

On April 22, 2016, Jeremy began hearing rumors at work concerning Soulier's absence. According to Jeremy, employees at the facility were saying that Soulier had been fired for threatening to kill everyone at the Hood facility, and Jeremy was told that this rumor had been discussed at a workplace safety meeting. The same rumors were later repeated to Soulier by Hood employees and others in the industry.

Soulier remained hospitalized for almost two weeks. Although he was allowed limited telephone access during the latter part of his hospitalization, he did not attempt to contact anyone at Hood because he believed that they had been informed of his hospitalization, that he was on FMLA leave, and that there were no problems with his employment. Despite the fact that Scott had recently approved Soulier's intermittent FMLA leave for PTSD flare-ups, she denied understanding that his absence was related to PTSD. According to Scott, she assumed, based on the information she had received from Harrell, that Soulier had been arrested for making threats against his ex-wife.

Scott made one unsuccessful attempt to reach Soulier by telephone at the numbers listed in his personnel file, which were not working numbers. Thereafter,

Scott consulted with John Langston, Hood's corporate Human Resources Director, about the situation. Scott informed Langston that Soulier had been absent from work without calling in for several days, but did not mention that Soulier had recently been approved for intermittent FMLA leave. At Langston's direction, Scott sent Soulier a certified letter on April 26, informing him that he would be terminated due to job abandonment if he did not contact Human Resources by April 29. When no response was received, Soulier was terminated and his insurance was cancelled effective April 30.

Although Soulier was still hospitalized and was not aware of the letter or his subsequent termination, his father signed for the certified letter on his behalf on May 2, 2016. After reading the letter, Soulier's mother, Cynthia, called Scott to inquire about the validity of the letter, given that it had not even been received by the April 29 deadline and that Soulier had been approved for intermittent FMLA leave for the condition for which he was hospitalized. Despite being informed of the circumstances, Scott maintained that the decision to terminate Soulier for job abandonment was a "corporate decision." Because Soulier was still hospitalized at this time, Cynthia contacted Soulier's divorce attorney for assistance in communicating with Hood regarding his employment and FMLA leave. After Soulier's attorney spoke with Langston and supplied requested documentation regarding Soulier's hospitalization, Langston agreed to look into the matter over the next four or five days "to see if there was anything we could do."

Soulier was discharged from the hospital on May 4. Although he was released to return to work by his doctors on May 6, his attorney informed him that Hood was investigating his employment status, so Soulier did not report to work at that time. While awaiting a decision from Hood, Soulier was not being paid. He was offered the opportunity to make some money at a "side job." In order to do the work, Soulier needed his personal tools, which were still on Hood's premises.

4

In the early evening on May 11, Soulier went to Hood's facility to retrieve his tools, but the security guard would not let him past the main gate. Soulier was eventually told that his tools were locked up in the Human Resources Department and he would have to return during normal business hours to retrieve them. Soulier became extremely angry and began yelling and cursing at the security guard and Hood employees. The West Feliciana Parish Sheriff's Office was eventually called, and Soulier was told to leave the premises and not return. Following this altercation, Langford informed Soulier's attorney that his aggressive, hostile, out-of-control behavior while trying to retrieve his tools made him a safety concern for the facility, and he would not be reinstated.

Soulier filed a petition for damages against Hood and his supervisor, Harrell, seeking damages for his unlawful termination in violation of the FMLA and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"),[6] as well as for the dissemination of false information regarding his alleged threat to "shoot up" the Hood facility. Hood and Harrell raised a number of affirmative defenses, including that Soulier had failed to mitigate his alleged damages and that, based on evidence acquired after suit was filed, Soulier would have been terminated anyway due to his threatening behavior and threats of violence.[7]

Hood and Harrell filed a motion for summary judgment, and on August 24, 2017, the trial court granted summary judgment dismissing Soulier's claims for defamation and violations of the Louisiana Military Service Relief Act/USERRA and dismissing Harrell as a party from the suit. The trial court denied the motion insofar as it sought to dismiss Soulier's claims against Hood for wrongful discharge in violation of the FMLA.

---

[6] Although Soulier's petition sets forth a state law claim under La. R.S. 29:422, this provision of the Louisiana Military Service Relief Act adopts and provides for enforcement of all provisions of the Servicemembers Civil Relief Act (50 U.S.C. § 3901, et seq.) and USERRA (38 U.S.C. § 4301, et seq.) in Louisiana state courts. The Louisiana Military Service Relief Act's prohibition of discrimination based on military service, La. R.S. 29:404, mirrors the language of USERRA. See 38 U.S.C. § 4311.

[7] The affirmative defense based on after-acquired evidence was raised via an amended answer filed with leave of court on April 25, 2017.

5

Hood filed a motion in limine prior to trial, seeking to prevent Soulier from testifying or introducing any evidence at trial about his efforts to mitigate his damages by obtaining comparable employment. Hood argued that since Soulier had consistently denied seeking other employment in response to discovery requests and in his deposition testimony, he should be prohibited from testifying about his recent self-employment at trial to show an attempt to mitigate his damages. The trial court ruled that Soulier would be allowed to testify, but the court would disregard any testimony that conflicted with Soulier's discovery responses and prior testimony.

After the conclusion of the bench trial, the trial court found that Soulier's rights under the FMLA had been violated and rendered judgment awarding Soulier back pay of $150,798.00, liquidated damages of $150,798.00, attorney fees of $50,000.00, expert witness fees of $2,350.00, and court costs. The court denied Soulier's request for equitable relief in the form of front pay.

Hood filed a suspensive appeal, arguing that the trial court erred in awarding lost wages, liquidated damages, and attorney fees and costs to Soulier, since he failed to mitigate his damages by exercising reasonable diligence to obtain comparable employment. Soulier filed a cross motion for devolutive appeal, assigning as error the trial court's award of statutory attorney fees and costs without an evidentiary hearing, denial of his request for front pay, and denial of his claims under the Louisiana Military Service Relief Act/USERRA.

## DISCUSSION

*FMLA Claims*

The FMLA requires covered employers to provide eligible employees with up to twelve weeks of leave during any twelve-month period, if the employee has a

serious health condition[8] that makes him unable to perform the functions of his position. 29 U.S.C. § 2612(a)(1)(D). This leave may be taken intermittently if medically necessary. 29 U.S.C. § 2612(b)(1). However, an employee taking intermittent leave is required to notify his employer as soon as practicable of his intent to take leave on particular dates if those dates were initially unknown. 29 C.F.R. § 825.302(a). Soulier was approved for intermittent FMLA leave for "flare-ups" of his PTSD prior to the absence that led to his termination. The notice of approval of Soulier's intermittent FMLA leave contained an acknowledgement that the necessary leave would be unscheduled, but informed him of the FMLA's requirement that he notify Hood "as soon as practicable" of the dates of FMLA leave.

When an employee returns from FMLA leave, he is entitled to be restored to his original position or to an equivalent position; however, the restored employee is not entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave. 29 U.S.C. § 2614.

The FMLA contains two distinct provisions. The first is a set of substantive rights or entitlements. The employer may not interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right under FMLA. 29 U.S.C. § 2615(a)(1). In the context of an interference claim, once the employee has met the statutory requirements, he is entitled to leave under the FMLA; the employer's intent is irrelevant. *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 566 (E.D. La. 2006). The second provision under the FMLA protects employees from retaliation or discrimination for exercising their rights under the FMLA. 29 U.S.C. § 2615(a)(2).

---

[8] Under the FMLA, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves inpatient care as defined in 29 CFR § 825.114 or continuing treatment by a health care provider as defined in 29 CFR § 825.115. 29 C.F.R. § 825.102. The facts that Soulier suffered from a serious health condition (PTSD) and that he was entitled to intermittent FMLA leave for this condition were admitted by Hood.

The FMLA provides for monetary damages for violations, including compensatory backpay[9] and other lost compensation, interest thereon, and liquidated damages doubling that amount; appropriate equitable relief, including employment, reinstatement, and promotion; and reasonable attorney fees, expert witness fees, and costs. 29 U.S.C. § 2617.

*Duty to Mitigate Damages*

Hood argues on appeal that the trial court erred in awarding backpay, liquidated damages, and attorney fees and costs under the provisions of the FMLA because Soulier failed to mitigate his damages by making a reasonable effort to obtain suitable employment.

Despite the general rule that an employee whose FMLA rights were violated is entitled to backpay and the other elements of damages provided for in the Act, there is nevertheless a requirement incumbent on every plaintiff to have, to some extent, attempted to mitigate his damages. *Williams v. Rubicon, Inc.*, 01-0074, p. 6 (La.App. 1 Cir. 2/15/02), 808 So.2d 852, 858-59. An improperly dismissed employee may not simply remain idle and recover lost wages from the date of discharge. He must make a reasonable effort to find other suitable employment; although he need not go into another line of work, accept a demotion, or take a demeaning position. *Rideau v. Lafayette Health Ventures, Inc.*, (W.D. La. 2019), 2019WL1987185 at *4-5. A court may limit an employee's backpay if the employer comes forward with evidence that: (1) the employee did not exert reasonable efforts to mitigate his damages, and (2) there was a reasonable likelihood that the employee would have found equivalent work through exercising reasonable diligence. The burden of presenting evidence regarding mitigation of

---

[9] Backpay covers the period of time from termination until trial, but does not include the period of time which would have constituted an FMLA leave of absence, since that leave would have been unpaid. *Barrilleaux v. Thayer Lodging Group, Inc.*, 1998 WL 411385 at *1 (E.D. La. 1998).

damages is on the employer; a plaintiff is not required to prove sufficient diligence in finding alternative employment. *Williams*, 01-0074 at p. 6, 808 So.2d at 858-59.

The determination of whether an employee has exercised reasonable efforts to mitigate his damages is ultimately a question of fact for the trier of fact's consideration. *Williams*, 01-0074 at p. 6, 808 So.2d at 859. While Hood produced no evidence at trial of equivalent employment which Soulier could have obtained through the exercise of reasonable diligence, Hood's position is that it did not have to prove the availability of suitable employment if Soulier did not first prove that he had made some effort to obtain employment.

Soulier testified that following his termination, he reached out to several of his contacts in the industry, who had offered him jobs in the past, in order to inquire about possible employment opportunities. In each instance, he was told that they "had heard about what had happened when I was fired," and no offers of employment were made. Aside from these phone calls, Soulier did not submit applications for any positions. He explained that his ongoing treatment for PTSD, which required him to miss work intermittently, made it difficult to apply for jobs. Shortly before trial, Soulier had begun working as a self-employed mechanic at a rate of $800.00 per week, but as of trial, he was no longer working. He testified that he "found it difficult to work with people and to trust employers."

Despite the limited evidence of Soulier's efforts to obtain employment, Hood had the burden of proving that there was a reasonable likelihood that Soulier could have obtained suitable employment through reasonable effort. Because Hood offered no evidence of the existence of suitable employment opportunities for Soulier, its burden of proof on the failure to mitigate defense was not satisfied, and the trial court did not err in refusing to limit Soulier's award of damages.

*Front Pay*

Soulier argues on appeal that the trial court erred in refusing to award front pay under the circumstances of this case. While reinstatement is the presumptively favored equitable remedy for FMLA violations, where reinstatement is either impractical or impossible, the FMLA permits a trial court, in its discretion, to grant an amount of future earnings, or "front pay,"[10] in lieu thereof. See *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007). The primary circumstance in which reinstatement has been found to be impractical or impossible is when the employer-employee relationship is so hostile (either because of the termination itself or because of the subsequent litigation) that there is no longer any possibility of a productive and amicable relationship between the parties. *Miller v. AT&T*, 83 F.Supp.2d 700, 708 (S.D. W.Va. 1999), *affirmed*, 250 F.3d 280 (4th Cir. 2001). Given the evidence before the trial court, especially the fact that the police were called and Soulier was banned from the Hood facility after the confrontation at the security gate, we find no error in the trial court's conclusion that reinstatement is not an appropriate equitable remedy in this matter. However, Hood argues (and the trial court agreed), that no front pay should be awarded to Soulier in this case because Hood proved that Soulier would more likely than not have been terminated by Hood by the time of trial for reasons not violative of the FMLA.

A trial court's decision regarding whether an award of front pay is appropriate is subject to the abuse of discretion standard of review. *Downey*, 510 F.3d at 544, citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001). In exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case. *Id.* "Front pay can only be calculated through intelligent guesswork, and we recognize its

---

[10] Front pay covers the period of time from trial to the employee's anticipated retirement and is "the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." *Kramer v. Logan County Sch. Dist. No. R-1*, 157 F.3d 620, 626 (8th Cir. 1998).

speculative character by according wide latitude in its determination to the district courts." *Sellers v. Delgado Coll.*, 781 F.2d 503, 505 (5th Cir.1986). The courts have identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship. *Downey*, 510 F.3d at 544.

Hood offered a substantial amount of evidence, which the trial court found credible, that Soulier would have been terminated by the time of trial for reasons unrelated to his FMLA leave. There was testimony at trial regarding a number of instances, both before and after his absence and termination, where Soulier became engaged in confrontations or heated arguments with Hood employees. Shortly before his absence and termination, Soulier had to be asked to leave the Human Resources Department because he was angry and shouting loudly at Scott over a disciplinary matter. After his termination and release from the hospital, Hood's security guard had to call the police to remove Soulier from the premises when he became irate, yelling and using profanity, after being told he would have to return during normal business hours to retrieve his personal belongings. Langston testified that Soulier was considered to be a safety concern at the Hood facility due to his anger and out-of-control behavior. Additionally, during the course of the litigation, evidence was discovered by Hood of drug use by Soulier, a drug-related arrest in August 2016, violation of a protective order, and other threats or acts of violence. The employee handbook, which Soulier acknowledged receiving and signing for, listed conduct violations which could result in disciplinary action or termination, including: use, possession, or being under the influence of any

11

alcohol, drugs, or other substances; insubordination; disorderly conduct; and harassment of any kind. The handbook further advised that anyone determined to be responsible for threats of (or actual) violence, direct or indirect, would be subject to prompt disciplinary action or termination. Based on the evidence before the court, we cannot say that the trial court abused its discretion in concluding that an award of front pay was not appropriate under the circumstances.

*Attorney Fees*

Soulier argues on appeal that the trial court erred in failing to conduct an evidentiary hearing on the issue of attorney fees. Soulier also states, without any further explanation or argument, that "[t]he award is arbitrary and capricious."

Soulier cites no authority for his position that attorney fees cannot be awarded in a state court proceeding for a violation of the FMLA without a separate post-judgment evidentiary hearing, and we do not agree that such a hearing is required by law. Soulier seems to base his argument that federal law mandates that the court conduct a separate post-judgment evidentiary hearing on the issue of attorney fees on FRCP Rule 54(d)(2), which provides that a claim for attorney fees must be made by motion, filed no later than fourteen days after entry of judgment, unless the substantive law requires those fees to be proved at trial as an element of damages. On a party's request, Rule 54(d)(2)(C) requires the court to give an opportunity for adversary submissions on the motion for attorney fees and to find the facts and state its conclusions of law. However, Rule 54 is not applicable to the instant proceedings, as the Federal Rules of Civil Procedure only apply to proceedings in United States district courts. See FRCP Rule 1.

The FMLA mandates the award of reasonable attorney fees to a prevailing plaintiff. 29 U.S.C. § 2617(a)(3); see *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 303 (4th Cir. 2009). Although the award of reasonable attorney fees is mandatory, the

amount of attorney fees awarded is at the trial court's discretion. Additionally, a trial court has discretion to reduce an attorney fee award for an FMLA violation where the attorney achieved only partial success on the plaintiff's claims. See *Hernandez v. Bridgestone Americas Tire Operations, LLC*, 831 F.3d 940, 948-949 (8th Cir. 2016) (per curiam). A reviewing court should only reverse discretionary fee awards if under all the facts and circumstances the award is clearly wrong. *Dotson*, 558 F.3d at 303.

Where the record does not contain evidence of the time and costs of an attorney's services, the court may nonetheless fix the fee from the record. *Chesterfield v. Genesis Hospice, L.L.C.*, 13-0179, p. 5 (La.App. 1 Cir. 12/19/13), 137 So.3d 22, 25, citing *Cochran v. American Advantage Mortg. Co., Inc.*, 93-1480 (La.App. 1 Cir. 6/2/94), 638 So.2d 1235, 1240.

Rule 1.5 of the Louisiana Rules of Professional Conduct provides the following factors to be considered by the court in setting reasonable attorney fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Where the nature and extent of services provided are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel and to fix the value. *Mitchell v. Turner*, 588 So.2d 1305, 1308 (La. App. 2nd Cir. 1991). Considering what we are able to glean from the record regarding the Rule 1.5 factors, and taking into account that Soulier's attorney achieved only partial success on his claims, we cannot say that the trial court's award of a $50,000.00 attorney fee is clearly wrong.

*Louisiana Military Service Relief Act/USERRA Claims*

Soulier also argues on appeal that the trial court erred in dismissing his claims under the Louisiana Military Service Relief Act/USERRA on summary judgment.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to then produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Crosstex Energy Services, LP v. Texas Brine Company, LLC*, 17-0895, pp. 4-5 (La. App. 1 Cir. 12/21/17), 240 So.3d 932, 935-36, *writ denied*, 18-0145 (La. 3/23/18), 238 So.3d

963. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Id*, 240 So.3d at 936.

The purpose of Louisiana's Military Service Relief Act, La. R.S. 29:401-426, is to prevent veterans from being disadvantaged and to prohibit discrimination against persons because of their uniformed service when they return to civilian life. La. R.S. 29:402(B). The Louisiana Military Service Relief Act and USERRA prohibit the denial by an employer to a person who has performed military service of initial employment, reemployment, retention in employment, promotion, or any benefit of employment, on the basis of that military service. La. R.S. 29:404(A); 38 U.S.C. § 4311(a). An employer is considered under the law to have violated this provision if the employee's military service is a "motivating factor" in the employer's action, unless the employer proves that the employment action would have been taken in the absence of such military service. La. R.S. 29:404(B); 38 U.S.C. § 4311(c)(1).

In support of its motion for summary judgment, Hood offered Scott's affidavit, in which she attested that Soulier's military service did not play a role in Hood's decision to terminate his employment. Scott's affidavit stated that Soulier had been terminated for job abandonment due to his failure to show up or call in to work for eight consecutive work days and that she had no knowledge prior to his termination that his absence was related in any way to PTSD. She further attested that between 2014 and 2016, six other Hood employees had been terminated for failing to show up or call in to work for three or more consecutive days, and none of those employees had served in the military. Hood also offered documentation of Soulier's frequent tardies and absences from work, as well as verbal and written reprimands for his "pattern of excessive tardiness," violation of the attendance policy by attempting to falsify attendance records, not wearing proper safety

15

equipment, cell phone use while on duty, and poor housekeeping. In opposition to the motion, Soulier offered various employment and disciplinary records; an excerpt from the Employee Handbook showing the applicable Attendance Policy and Absenteeism Procedure; excerpts from the depositions of Jeremy, Scott, Harrell, and two former coworkers; and documentation that the certified letter from Hood was not received until after he had been terminated. Based on our de novo review of the record, we conclude that Hood successfully pointed out an absence of factual support for an element essential to Soulier's claim; i.e., that his past military service was a motivating factor in Hood's termination of his employment. Although Soulier argues that his PTSD and subsequent hospitalization were related to his military service and were also a motivating factor in his termination, none of the evidence offered by Soulier in opposition to the motion created a genuine issue of material fact as to whether his military service was a motivating factor in his termination. As such, summary judgment dismissing his claims relating to the Military Service Relief Act/USERRA was properly granted.

### DECREE

For the above and foregoing reasons, the judgments of the Nineteenth Judicial District Court are affirmed. Costs of this appeal are assessed equally to Joseph Soulier and Hood Container of Louisiana, L.L.C.

**AFFIRMED.**

**JOSEPH SOULIER**

**VERSUS**

**HOOD CONTAINER OF LOUISIANA, L.L.C.**
**AND MITCHELL HARRELL**

**McDONALD, J., concurs.**

I respectfully concur with the opinion affirming the trial court's judgment.

Under federal caselaw interpreting the FMLA, an FMLA plaintiff has a duty to mitigate his damages. *See, e.g., Rideau v. Lafayette Health Ventures, Inc.*, No. 6:18-CV-00473, 2019 WL 1987185 *2 (W.D. La. May 2, 2019); *also see Dollar v. Smithway Motor Xpress*, Inc., 710 F.3d 798, 808 (8th Cir. 2013); *Miller v. AT&T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001); *Smith v. AS America, Inc.*, 227 F.Supp.3d 1039, 1042-43 (W.D. Mo. 2016); *Morgan v. Neiman-Marcus Grp., Inc./Neiman-Marcus Direct*, No. 305CV0079G, 2005 WL 3500314 *8 (N.D. Tex. Dec. 20, 2005). However, I note that, at least in the federal 5th Circuit, the question of what a defendant must prove to establish its "failure to mitigate" defense appears to be uncertain. *See Rideau*, 2019 WL 1987185 at *4-5.