754 So.2d 1081 (1999)
Joseph E. WILLIAMS
v.
RUBICON, INC. and Len Sanford.
No. 98 CA 1743.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Writ Denied January 7, 2000.
R. Bruce Macmurdo, Baton Rouge, for Plaintiff-Appellant Joseph E. Williams.
Alan Robert, Gonzales, for Defendants-Appellees Rubicon and Len Sanford.
M. Nan Alessandra, Michael F. Weiner, New Orleans.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
PETTIGREW, J.
Plaintiff, who was fired from his job while on paid sick leave, filed suit for damages against his former employer alleging defamation, intentional infliction of mental distress, and discrimination. The matter proceeded to trial on the merits, at which time the plaintiff pursued a claim for wrongful termination under the Family and Medical Leave Act. The trial court rendered judgment in favor of the employer *1082 and dismissed plaintiff's claims with prejudice. This appeal by plaintiff followed. We reverse and remand.

FACTS AND PROCEDURAL HISTORY
In February 1979, plaintiff, Joseph E. Williams, began working for Rubicon, Inc. as a lab technician. According to his supervisors, Mr. Williams had an exemplary work record. In fact, he had perfect attendance at work for approximately six years prior to January 3, 1995, when he underwent knee surgery for a torn medial meniscus in his right knee.
Mr. Williams learned in November 1994 that he was in need of the knee surgery. He notified his supervisor, Aki Miyagi, that he wanted to take a few days of vacation following the surgery and then return to work as soon as possible on a light-duty basis. Arthroscopic surgery was performed by Dr. Joe A. Morgan on January 3, 1995, at which time Dr. Morgan discovered that the damage to Mr. Williams' knee was more extensive than had been anticipated. Dr. Morgan examined Mr. Williams on January 10, 1995, and removed his staples. At that time, Dr. Morgan advised Mr. Williams that he could not return to work until after January 31, 1995, at which time his progress would be reevaluated. Dr. Morgan prescribed physical therapy and told Mr. Williams to "use crutches as needed."
Mr. Williams spoke with Mr. Miyagi on January 10, 1995, and told him that he would be out of work until at least January 31, 1995, as per Dr. Morgan's orders. Mr. Miyagi submitted a leave form for Mr. Williams at that time to facilitate Mr. Williams' paid sick leave. According to Mr. Miyagi, it was customary for Rubicon employees to receive one week of paid medical leave for every year of service. On January 11, 1995, Mr. Miyagi called Mr. Williams and requested that he provide Rubicon with a doctor's excuse. Mr. Williams mailed a doctor's excuse to Mary Bowen, Rubicon's company nurse, on January 16, 1995. The note from Dr. Morgan, dated January 16, 1995, indicated that Mr. Williams was under Dr. Morgan's care and would be until January 31, 1995. While the note from Dr. Morgan was in fact received by Rubicon, the evidence adduced at trial indicated that Rubicon officials did not read the note prior to making the decision to terminate Mr. Williams' employment.
On January 18, 1995, Mr. Williams received a call from the American Red Cross, seeking his assistance in helping victims of a tornado that had struck in Brusly, Louisiana. Mr. Williams was an active volunteer member of the American Red Cross, but had taken his name off of the volunteer roster for January 1995 because of his knee surgery. When he was first contacted on January 18, he indicated that he was unable to assist because he was recuperating from knee surgery. The Red Cross official called a second time and told Mr. Williams that he was unable to reach any other volunteers to assist him. Mr. Williams agreed to help, but again indicated that he would be very limited in what he could do because of his knee. Later that day, Mr. Williams drove a canteen truck to the tornado site and served refreshments while sitting in the truck. He brought one crutch with him and remained at the tornado site for approximately six hours. He returned in the canteen truck on January 19, but was there for only an hour that day. A local news crew was covering the tragedy and happened to film Mr. Williams while he was standing in front of the canteen truck. According to Mr. Williams, he "was just standing beside the vehicle" stretching his legs. It was not until a couple of days later that Mr. Williams learned that he had been shown on the news.
Mr. Miyagi learned through other Rubicon employees that Mr. Williams was seen on the news doing volunteer work for the Red Cross. Believing that Mr. Williams' actions, i.e., working for the Red Cross while on paid sick leave for Rubicon, "was *1083 surely a violation of work ethics," Mr. Miyagi discussed the matter with his supervisor, Wayne Anton, Process Engineering Manager. Len Sanford, Director of Industrial Relations, and Toby Gerhold, Technical Manager, were ultimately advised of the situation regarding Mr. Williams. Rubicon officials viewed the tape, confirmed exactly what Mr. Williams had done for the Red Cross, and concluded that Mr. Williams had not been honest with them about his medical condition. Mr. Sanford contacted Rubicon's company doctor, Dr. John Fraiche, and requested that he contact Dr. Morgan to determine if Mr. Williams was capable of performing light-duty work. However, before receiving any medical information regarding Mr. Williams from either Dr. Fraiche or Dr. Morgan, Mr. Sanford, along with other Rubicon officials, made the decision to terminate Mr. Williams.
According to Mr. Williams, he received a conference call on January 26, 1995, from Mr. Sanford, Mr. Anton, and Mr. Miyagi notifying him of his termination from Rubicon effective January 31, 1995. Mr. Williams was told that what he had done for the Red Cross was "a gross violation of [Rubicon's] company policy." When Mr. Williams asked if he could go to Rubicon to talk with his supervisors, he was advised that he was being terminated and that there would be no discussion. As the call was ended abruptly by the Rubicon officials, Mr. Williams was not given an opportunity to explain his actions.
Mr. Williams returned to see Dr. Morgan on January 31, 1995, and advised Dr. Morgan that he had been fired. Dr. Morgan examined Mr. Williams and determined that he was in need of additional physical therapy. Dr. Morgan offered to write a letter to Rubicon regarding Mr. Williams' condition. In a letter dated January 31, 1995, Dr. Morgan indicated that Mr. Williams was in need of three more weeks of physical therapy and was not being released to return to work at that time. Mr. Williams last saw Dr. Morgan on February 21, 1995, at which time he was released to return to work. When asked about Mr. Williams' physical abilities from January 10, 1995, through January 31, 1995, Dr. Morgan indicated that Mr. Williams was capable of light activities, but was not capable of working at regular duty and had not been released yet to return to light-duty work.
Following his termination from Rubicon, Mr. Williams filed suit against Rubicon and Mr. Sanford, alleging defamation, intentional infliction of mental distress, and discrimination on the grounds of disability, in violation of La. R.S. 23:1006, et seq., La. R.S. 51:2231, et seq., and La. R.S. 46:2254, et seq. The defendants filed a motion for summary judgment asserting that all of Mr. Williams' claims should be dismissed because there were no genuine issues of material fact in dispute. Mr. Williams opposed the motion for summary judgment by asserting that he intended to proceed under the Family and Medical Leave Act ("FMLA" or "the Act"). The motion was summarily denied by the trial court without reasons.
The matter proceeded to trial, at which time Mr. Williams stipulated that he would only pursue his claim for wrongful termination under the FMLA. After hearing the evidence, the trial court rendered judgment in favor of Rubicon and Mr. Sanford, dismissing Mr. Williams' claim with prejudice. Mr. Williams has appealed this judgment assigning the following specification of error:
The Trial Court erred by analyzing the Family and Medical Leave Act as if it were an anti-discrimination statute that required plaintiff to prove Rubicon was motivated by an anti-FMLA bias and then by concluding that the law was not violated. Rubicon is strictly liable for violating the FMLA requirement to obtain medical certification if it doubted that he [Williams] had a condition that prevented him from work and ultimately for failing to restore Williams to his job.

*1084 FAMILY AND MEDICAL LEAVE ACT
Under the Family and Medical Leave Act of 1993, an eligible employee with a "serious health condition that makes the employee unable to perform the functions of the position of such employee" is entitled to up to twelve weeks of medical leave. 29 U.S.C. § 2612(a)(1)(D).[1] Employees who take leave pursuant to the Act are entitled to return to the same or equivalent position as they had prior to the leave. 29 U.S.C. § 2614(a)(1).
An employer may require that the employee's request for leave "be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). An employee's medical certification "shall be sufficient" if it contains the following information: "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [and] (4) ... a statement that the employee is unable to perform the functions of the position of the employee." 29 U.S.C. § 2613(b). Furthermore, the Act provides the following certification procedure an employer may utilize if it questions the validity of the medical certification submitted by the employee:
(c) Second Opinion
(1) In general
In any case in which the employer has reason to doubt the validity of the certification provided ... the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.
(2) Limitation
A health care provider designated or approved under paragraph (1) shall not be employed on a regular basis by the employer.
(d) Resolution of conflicting opinions
(1) In general
In any case in which the second opinion described in subsection (c) of this section differs from the opinion in the original certification provided under subsection (a) of this section, the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee concerning the information certified under subsection (b) of this section.
(2) Finality
The opinion of the third health care provider concerning the information certified under subsection (b) of this section shall be considered to be final and shall be binding on the employer and the employee.
29 U.S.C. § 2613.
The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the Act. 29 U.S.C. § 2615(a)(1). Further, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the Act. 29 U.S.C. § 2615(a)(2).

DISCUSSION
Mr. Williams argues on appeal that the trial court erred in "analyzing the FMLA as if it were an anti-discrimination statute that required [him] to prove that [Rubicon] was motivated by anti-FMLA bias." He alleges that the trial court erroneously focused on Rubicon's motive or intent in determining whether the FMLA was violated. Mr. Williams asserts that *1085 he is not required to show Rubicon's Intent to retaliate because he was not fired "for opposing any practice made unlawful" under the provisions of the FMLA. Rather, he has a "substantive claim under the FMLA since he was not restored to his position after he took qualified leave." Mr. Williams continues, noting that "Rubicon violated the FMLA by failing to seek, when it had the occasion to doubt whether [Mr.] Williams was truly unfit to work, the medical certification explicitly required in such a situation."
Rubicon counters, arguing "that the FMLA does not prevent an employer from discharging an employee who violates company policy, simply because that employee is out on leave." Rubicon maintains that "[Mr.] Williams would have been discharged for violating company standards of ethics and trust whether or not he was out on leave at the time." While we agree with Rubicon that the FMLA does not act to prevent an employer from discharging an employee who is in violation of company policy, the fact remains that the FMLA creates substantive rights that must be honored by employers. Diaz v. Fort Wayne Foundry Corporation, 131 F.3d 711, 712 (7th Cir.1997).
After a review of the record in this case, it is clear that Rubicon did not honor Mr. Williams' substantive rights pursuant to the FMLA. Rubicon failed to follow the procedures set forth in the FMLA for obtaining the required medical certification regarding the "serious health condition" that prevented Mr. Williams from performing the functions of his job at Rubicon. Further, there is no evidence in the record that supports Rubicon's position that Mr. Williams violated any company policy. Mr. Sanford and other Rubicon officials admitted that Rubicon does not require employees who are on leave to return to work if they have been told by their doctor to stay off work or if they have not been cleared by their doctor to return to work.
While the cases addressing the FMLA are sparse, there is one case, Sims v. Alameda-Contra Costa Transit District, 2 F.Supp.2d 1253 (N.D.Cal.1998), wherein the court detailed the history of the FMLA and specifically addressed the issue of the utilization of the "second opinion" procedure set forth in the Act. The Sims court found as follows:
The statutory scheme is designed to have medical determinations made by health care providers, rather than courts. See Reich v. The Standard Register Co., 1997 WL 375744, *2, 1997 U.S. Dist. LEXIS 3021, *5-6 (W.D.Va.1997) ("The FMLA contemplates that decisions of whether an employee has a `serious health condition' will be made by doctors."). In responding to comments by the U.S. Small Business Administration (SBA) on the interim regulations adopted by the DOL [Department of Labor], the DOL explained that employers are not to make the medical judgments as to whether a particular medical condition is a serious health condition justifying leave under the Act:
SBA mistakenly presumes that this is a judgment that the statute and regulations permit an employer to make. If the health condition meets the definition in the regulations at § 825.114 and, as provided in §§ 825.305-825.307, an employee furnishes a completed DOL-prescribed medical certification from the health care provider, the only recourse available to an employer that doubts the validity of the certification is to request a second medical opinion at the employer's expense. Employers may not substitute their personal judgments for the test in the regulations or the medical opinions of the health care providers of employees ... to determine whether an employee is entitled to FMLA leave for a serious health condition.
60 Fed.Reg. 2180, 2235 (1995) (emphasis added).
. . . .

*1086 The structure and internal logic of the Act also suggests that the certification procedures of [29 U.S.C. §] 2613 are the exclusive means for an employer to challenge the medical facts underlying the employee's certification. Although the regulations explicitly permit an employer to deny leave to an employee who fails to produce "a requested medical certification," 29 C.F.R. § 825.312(b), there is no explicit authority for an employer to deny leave to an employee who does produce medical certification. To the contrary, Congress stated that if an employee's medical certification meets certain requirements, it "shall be sufficient." 29 U.S.C. § 2613(b). If an employer has the choice of skipping the certification process and engaging instead in additional discovery of medical facts, the term "sufficient" is rendered meaningless.
Moreover, the Act provides that if an employer does seek a second (or third) medical opinion, "the employee is provisionally entitled to the benefits of the Act" while that process is being pursued. 29 C.F.R. § 825.307(a)(2). By specifying that the employee is to receive the benefits of the FMLA during the pendency of the second-opinion process, this provision implies that the employee's submission of a complete medical certification is sufficient to trigger FMLA protection unless and until there is contrary medical evidence. The provision suggests that the second and third medical opinion process is the exclusive verification option for an employer who has reason to doubt the validity of the employee's original certification. Moreover, the opinion of the third health care provider "shall be considered to be final and shall be binding on the employer and the employee." 29 U.S.C. § 2613(d)(2). This final and binding procedure ensures a speedy determination of an employee's need for medical leave where the employer had reason to question the validity of the initial certification.
Sims, 2 F.Supp.2d at 1261-62.
While the facts of Sims are distinguishable from the facts of the instant case, the discussion of the certification procedure set forth in the FMLA is very helpful in our analysis. Not only did Rubicon officials fail to follow the procedures set forth in the Act for obtaining medical certification regarding Mr. Williams' condition, they substituted their own judgment for the medical opinion of Mr. Williams' treating physician.
After being notified that Mr. Williams could not return to work until after his progress was reevaluated by Dr. Morgan on January 31, 1995, Mr. Williams' supervisor, Mr. Miyagi, requested that Mr. Williams provide Rubicon with a doctor's excuse. Although Mr. Williams did as requested, Rubicon officials did not even look at the note until after Mr. Williams was fired. According to the testimony of Mr. Sanford, this note from Dr. Morgan played no part in his decision to terminate Mr. Williams. Mr. Sanford indicated that he had already received information regarding Mr. Williams' condition from Mr. Miyagi and "was operating on the assumption that it was all completely correct." Pursuant to Rubicon's company policy, Mr. Williams remained out of work on paid sick leave from the date of his surgery through his termination.
Rubicon officials subsequently learned that Mr. Williams had been seen on a local newscast, assisting tornado victims in Brusly, Louisiana, as part of his work as a Red Cross volunteer. They confirmed that Mr. Williams had in fact driven a canteen truck to the tornado site and manned the truck for approximately six hours on January 18, 1995. After learning this information, Mr. Sanford asked the company doctor to contact Dr. Morgan to determine whether Mr. Williams was physically capable of performing light-duty work. According to Rubicon's own policy, Mr. Williams would have to be cleared by *1087 his doctor before returning to work on a light-duty basis. However, rather than waiting to hear from Dr. Morgan regarding Mr. Williams' capabilities, Rubicon officials decided on January 26, 1995, to terminate Mr. Williams for a breach of company ethics. Rubicon officials later received a letter from Dr. Morgan dated January 31, 1995. According to this letter, Mr. Williams was still being treated by Dr. Morgan, had not been released to return to work, and was to continue in physical therapy for three additional weeks. When asked why they did not wait to hear from Dr. Morgan before deciding to terminate Mr. Williams, Mr. Sanford responded, "[w]e didn't feel like it was necessary." Thus, by their own admission, Rubicon officials were unaware on January 26, 1995, that Mr. Williams had not been released by Dr. Morgan, and therefore, would not have been able to return to work at Rubicon even on a light-duty basis.
Mr. Sanford acknowledged that Mr. Williams was covered by the FMLA. He further testified that he was aware of the procedures set forth in the Act for obtaining a second opinion in cases where there is doubt about an employee's medical condition. Mr. Sanford indicated, however, that their decision to fire Mr. Williams was based on common sense and had nothing to do with the FMLA.
[W]e weren't thinking in terms of Family and Medical Leave Act, we were thinking in terms of common sense and the fact that he was being paid full medical leave under our sick leave program. In addition, since we were paying his full salary, we think, we felt we deserved a more trustworthy type of situation based on the information that we had. We felt like what was happening was wrong.
The following colloquy between Mr. Williams' counsel and Mr. Sanford further evidences Rubicon's complete disdain for the procedures set forth in the FMLA:
Q. ... Under Rubicon's policies, Joe Williams was not able to come back to do light duty work before January 31st, because his doctor did not clear him to do so?
A. That is correct.
Q. You have no information from any medical source to indicate that Joe Williams jeopardized his recovery by going out on [sic] the [tornado] site, do you?
A. Not from a medical point of view. Common sense says that he is running a risk of injuring himself.
Q. This decision was made strictly based on your internal common sense deliberations without any input from doctors, correct?
A. That is correct.
Following our thorough review of the record, we are convinced that the trial court erred in finding that Rubicon's actions did not constitute a violation of the FMLA. Rubicon and Mr. Sanford clearly failed to honor the statutory entitlements that Mr. Williams was afforded by the Act. The trial court clearly erred in analyzing Mr. Williams' claim, and thus, did not address Rubicon's liability to Mr. Williams for damages pursuant to 29 U.S.C. § 2617. However, the record before us does not contain sufficient information for this court to adequately address the issue of damages. Therefore, we remand this matter to the trial court for a determination of damages consistent with this opinion and the pertinent provisions of the Act.

DECREE
For the foregoing reasons, the judgment of the trial court dismissing Mr. Williams' claim with prejudice is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. Costs associated with this appeal are assessed against defendants/appellees, Rubicon and Mr. Sanford.
REVERSED AND REMANDED.
NOTES
[1] It is undisputed that Rubicon is a covered employer and that Mr. Williams was a covered employee under the Act. See generally, 29 U.S.C. § 2611.