808 So.2d 852 (2002)
Joseph WILLIAMS
v.
RUBICON, INC. and Len Sanford.
No. 2001 CA 0074.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*855 R. Bruce MacMurdo, Baton Rouge, Victor L. Marcello, Gonzales, for Plaintiff-Appellee Joseph Williams.
Alan J. Robert, Gonzales, H. Alston Johnson, III, Baton Rouge, M. Nan Alessandra, Larry E. Demmons, New Orleans, for Defendants-Appellants Rubicon, Inc. and Len Sanford.
Before: FOIL and PETTIGREW, JJ., *856 and KLINE,[1] J. Pro Tem.
PETTIGREW, Judge.
In this case, plaintiff pursued a claim against his former employer for wrongful termination under the Family and Medical Leave Act ("FMLA"). The trial court rendered judgment in favor of plaintiff, awarding damages and attorney fees in the amount of $861,726.70, plus judicial interest. This appeal by the employer followed. For the reasons set forth below, we amend, and as amended, affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Joseph E. Williams, began working for Rubicon, Inc. as a lab technician in February 1979, where he remained employed until his termination in January 1995. Thereafter, Mr. Williams filed suit against Rubicon and Len Sanford, Director of Industrial Relations, (collectively referred to as "Rubicon") alleging wrongful termination under the FMLA.[2] The matter was tried in January of 1998, at which time the trial court found in favor of Rubicon, dismissing Mr. Williams' claims with prejudice. The court concluded that Mr. Williams had failed to prove by a preponderance of the evidence that Rubicon violated the FMLA or any other anti-discriminatory law when it terminated Mr. Williams. An appeal by Mr. Williams followed.
In Williams v. Rubicon, 98-1743, p. 11 (La.App. 1 Cir. 9/24/99), 754 So.2d 1081, 1087, writ denied, 99-3059 (La.1/7/00), 752 So.2d 864, this court reversed the trial court's judgment, finding that Rubicon "clearly failed to honor the statutory entitlements that Mr. Williams was afforded by the [FMLA]." We remanded the case to the trial court for a determination of damages in accordance with the pertinent provisions of the FMLA. On remand, the parties agreed to submit the matter on briefs concerning damages. After considering all pleadings and memoranda filed by the parties, the trial court found that Mr. Williams was entitled to $127,417.00 in back pay, a like amount in liquidated damages, and $525,529.00 in front pay, for a total of $780,363.00. Further, the trial court awarded Mr. Williams $81,363.70 in attorney fees. With regard to legal interest, the court awarded legal interest on the damage award from the date the FMLA claim was initiated, November 22, 1996, and legal interest on the attorney fees award from the date of the award, May 23, 2000. A judgment in accordance with these findings was signed by the trial court on June 7, 2000.
Mr. Williams subsequently filed a motion for new trial, arguing that legal interest on his damage award should have run from the date his suit was originally filed, July 21, 1995. The trial court denied the motion. Thereafter, Rubicon appealed, assigning the following specifications of error:
1. The Trial Court erred in finding that Plaintiff properly mitigated his damages.
2. The Trial Court abused its discretion by awarding Plaintiff $127,417 in back pay.
3. The Trial Court erred in relying on the expert report of Dr. James Richardson *857 in determining Plaintiffs economic damages.
4. The Trial Court abused its discretion in awarding Plaintiff liquidated damages under the Family Medical Leave Act[.]
5. The Trial Court abused its discretion in awarding Plaintiff over 20 years of front pay.
6. The Trial Court erred in awarding Plaintiff legal interest on the front pay portion of its damage award.
Mr. Williams answered the appeal, assigning error to the trial court's refusal to award legal interest from the date the suit was initially filed and the trial court's failure to award damages for mental anguish, embarrassment, and humiliation.

ANALYSIS
The purpose of the FMLA is to entitle employees to take a reasonable leave for the birth of a child, for the employee's serious health condition, or for the purpose of caring for family members with serious health conditions. 29 U.S.C. § 2612. The FMLA provides eligible employees with twelve weeks of unpaid leave and ensures the employee will be restored to their former position after they return to work. 29 U.S.C. § 2612(a)(1).
The type of damages that may be awarded when an employer violates the FMLA is set forth in 29 U.S.C. § 2617, which provides, in pertinent part, as follows:
(1) Liability
Any employer who violates section 2615 of this title shall be liable to any eligible employee affected
(A) for damages equal to
(i) the amount of
(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;
(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and
(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.
. . . .
(3) Fees and costs
The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

*858 AWARD OF BACK PAY
On appeal, Rubicon argues that the trial court's award of $127,417.00 was an abuse of discretion in two significant ways. Initially, Rubicon contends that the trial court erred in finding that Mr. Williams mitigated his damages after his discharge from Rubicon. Rubicon asserts that Mr. Williams'"minimal attempts at securing comparable employment, his decision to take a position of uncomparable [sic] employment only 8 weeks after his termination, and his continued failure to secure comparable employment to this day do not satisfy the legal requirement that [Mr. Williams] properly mitigated his damages." Secondly, Rubicon argues that assuming Mr. Williams did properly mitigate his damages, "the trial court erred in blindly adopting [Mr. Williams'] expert's back pay calculation, a calculation that is completely unsupported and unexplained in the expert report."
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La. 1993). For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Fountain v. Fountain, 93-2176, p. 5 (La.App. 1 Cir. 10/7/94), 644 So.2d 733, 738. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Id. The effect and weight to be given expert testimony is within the broad discretion of the trial judge. The importance placed upon such testimony is largely dependent upon the expert's qualifications and the facts that form the basis of his opinion. Thornton ex rel. Laneco Construction Systems, Inc. v. Lanehart, 97-2871, p. 5 (La.App. 1 Cir. 12/28/98), 723 So.2d 1127, 1130, writ denied, 99-0177 (La.3/19/99), 740 So.2d 115. Further, the rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La.1990).
With regard to Rubicon's allegation that Mr. Williams failed to mitigate his damages, he clearly has an obligation to use reasonable efforts to mitigate his damages. Rubicon, however, bears the burden of proving (1) that Mr. Williams failed to exercise reasonable diligence to mitigate his damages, and (2) there was a reasonable likelihood that Mr. Williams would have found equivalent work through exercising reasonable diligence. See, e.g. Syvock v. Milwaukee Boiler Manufacturing Co., Inc., 665 F.2d 149, 159 (7th Cir. *859 1981). The determination of whether an employee has exercised reasonable efforts to mitigate his damages is ultimately a question of fact for the trier of fact's consideration.
In its reasons for judgment, the trial court made the following factual findings concerning these issues:
Mr. Williams made over $60,000.00 during his last two years at Rubicon, enjoyed excellent health care and vacation benefits, and was contributing to a 401k savings plan. He was terminated by Rubicon for alleged ethical misconduct after sixteen years of employment. On the effective date of his termination, January 31, 1995, Mr. Williams began to send out resumes. Because companies in the chemical industry generally do not offer starting salaries to lab operators based on their work experience at other businesses, Mr. Williams was at a significant disadvantage in his effort to find comparable employment with comparable pay. Unsuccessful in his attempt, Mr. Williams ultimately secured employment as a medical technician at Earl K. Long Hospital in Baton Rouge, and made almost thirty[-]five thousand dollars ($35,000.00) in 1996. The record reflects that Mr. Williams worked the midnight shift in order to provide for his wife and children.
. . . .
Rubicon argues that because Mr. Williams failed to take reasonable efforts to mitigate his damages, his award should be reduced by the extent of his failure. The record reflects that Mr. Williams submitted a number of job applications in the three years between his being fired and the trial.... Additionally, Mr. Williams had registered with Olsten Staffing and Tempco Employment Company, the same two employment agencies which Rubicon uses to locate its lab technicians.... During the three[-]year hiatus, Mr. Williams was offered one $10.00 an hour job as a laboratory technician through Olsten and had interviewed with Formosa Plastics. Despite Mr. [Williams'] sixteen years of experience, Formosa was unwilling to make an exception to its $8.00 an hour starting pay rate, a pay rate which was probably comparable to the beginning pay rate at other companies in the area. Contrary to the argument urged by Rubicon, there is no evidence that Mr. [Williams'] salary at Formosa would definitely have been increased after four years to bring it in line with his salary at Rubicon....
Finally, it is revealing to note that Mr. Williams was respectably employed for all but two months of the three years between his termination from Rubicon and his trial. This fact is another indication to the Court that Mr. Williams is a motivated and conscientious worker whose inability to secure comparable employment was not due to a lack of effort on his part, but to circumstances largely beyond his control.
Moreover, with regard to its reliance on the expert testimony of Dr. James Richardson in determining Mr. Williams' damages, the court noted that based on the evidence in the record, "Dr. Richardson's valuations of Mr. [Williams'] lost wages... are reasonable and comport with FMLA guidelines."
We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the trial court's factual findings. Rubicon was obligated to show that Mr. Williams' efforts to find other employment were not reasonable or diligent. We are satisfied that Rubicon was unable to carry this burden. There was sufficient, credible evidence of Mr. Williams' efforts to mitigate his damages *860 by attempting to secure comparable employment. As noted by the trial court, Mr. Williams submitted a number of job applications and registered with two employment agencies in an attempt to find employment. Cf. Sprogis v. United Air Lines, Inc., 517 F.2d 387, 393 (7th Cir. 1975) (reasonable diligence shown by plaintiffs formal application for one job and her procurement of a temporary position during a two-year period of unemployment). Further, Mr. Williams was only unemployed for two months during the three years between his termination from Rubicon and the date of his trial. Thus, we conclude there is substantial evidence in the record to support the trial court's finding that Mr. Williams' pursuit of comparable employment was reasonable, and, as such, there should be no reduction in Mr. Williams' damage award.
With regard to the trial court's award of $127,417.00 in back pay, there was conflicting testimony submitted by the two expert witnesses concerning the economic damages suffered by Mr. Williams as a result of his termination from Rubicon. After considering all of the evidence, the trial court concluded that Dr. Richardson's valuations were "reasonable" and adopted same. Dr. Richardson conducted a very thorough review of Mr. Williams' earning history at Rubicon, including his base salary, overtime earnings, bonuses, health care benefits, long-term disability and insurance benefits, and vacation time. After considering Mr. Williams' W-2 forms from his current job at Earl K. Long Hospital and comparing same to his W-2 forms from Rubicon, Dr. Richardson extrapolated the figures and determined that Mr. Williams was entitled to $127,417.00 in back pay. According to Dr. Richardson, this amount represented Mr. Williams' "pay at Rubicon from the time of termination to the middle of January 1998 or just prior to the beginning of the trial less the pay received by Mr. Williams at Earl K. Long Hospital during the same time period." Dr. Richardson noted that the earnings were "appropriately compounded by a composite interest rate representing both short and long tern interest rates." Based on our review of the record, we cannot say there is any evidence that the reasons for Dr. Richardson's opinion were patently unsound. Thus, we find no manifest error in the trial court's reliance on Dr. Richardson's expert report. Accordingly, Rubicon's first three assignments of error are without merit.

LIQUIDATED DAMAGES
In assignment of error number four, Rubicon argues that the trial court erred in awarding Mr. Williams liquidated damages. Rubicon contends that the evidence in the record supports a finding that Rubicon acted with subjective good faith and had an objectively reasonable belief that its conduct did not violate the FMLA. Further, Rubicon asserts that the trial court erred in concluding that it was "compelled" to award liquidated damages based on this court's previous holding that Rubicon had acted with "complete disdain for the procedures set forth in the FMLA." See Williams v. Rubicon, 98-1743 at 10, 754 So.2d at 1087. Rubicon contends that the trial court should have made an independent determination of whether Mr. Williams was entitled to liquidated damages.
As previously indicated, an employer who violates the FMLA is liable for liquidated damages equal to the amount of actual damages and interest, unless it can prove that it undertook in "good faith" the conduct that violated the FMLA and that it had "reasonable grounds for believing that [its action] was not a violation" of the FMLA. 29 U.S.C. *861 § 2617(a)(1)(A)(iii). Good faith requires more than a showing of ignorance of the prevailing law or uncertainty about its development. It is not enough to show that a violation was not purposeful. Nor is good faith demonstrated by the absence of complaints on the part of employees or conformity with industry-wide practice. Good faith requires that an employer first take active steps to ascertain the dictates of the law and then move to comply with them. Reich v. Southern New England Telecommunications Corporation, 121 F.3d 58, 71 (2d Cir.1997). Although in the final analysis we review a trial court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling. See Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986). Doubling is the norm, not the exception. Shea v. Galaxie Lumber & Construction Company, Ltd., 152 F.3d 729, 733 (7th Cir.1998).
In ruling on this issue, the trial court ultimately concluded that an award of liquidated damages was appropriate, finding that Rubicon had "not established by a preponderance of the evidence a reasonable and good faith belief that its actions did not violate the FMLA." Notwithstanding the deference shown by the trial court to our previous finding that Rubicon had acted with "complete disdain" for the provisions of the FMLA, the trial court clearly reviewed the evidence and determined that Rubicon had failed to prove that it acted in good faith or with a reasonable belief in the legality of its actions.
We have considered the record and agree with the trial court's finding on this issue. When questioned at trial about Rubicon's actions in firing Mr. Williams, Len Sanford, Director of Industrial Relations, was unable to state any basis that Rubicon had for believing it was not violating the FMLA. In fact, Mr. Sanford indicated that the decision to fire Mr. Williams was based on common sense and had nothing to do with the FMLA. Further, Mr. Williams' superiors testified at trial that they had no knowledge of Rubicon providing any information to its employees regarding the provisions of the FMLA and the substantive rights created by same. Based on this evidence, it is clear that Rubicon took no active steps to ascertain the dictates of the FMLA before firing Mr. Williams. Moreover, Rubicon presented no evidence that it had reasonable grounds for believing that its acts were not a violation of the FMLA. Thus, the trial court's award of liquidated damages was warranted. This assignment of error is without merit.

AWARD OF FRONT PAY
In its final assignments of error, Rubicon argues that the trial court erred in awarding Mr. Williams over 20 years of front pay, or future lost earnings, and in awarding legal interest on the front pay portion of the damage award.[3] Rubicon contends that had Mr. Williams properly mitigated his damages, he would have found comparable employment at least by the time of trialthree years after his termination from Rubicon. Thus, Rubicon concludes, the trial court erred in awarding front pay to Mr. Williams. Rubicon further adds that even if an award of front pay was appropriate, the length of the award in this case was an abuse of discretion.
*862 Recently, in Dennis v. The Finish Line, Inc., 99-1413 (La.App. 1 Cir. 12/22/00), 781 So.2d 12, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 319, this court addressed the speculative nature of awards for lost future income as follows:
Awards for lost future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Therefore, the trier of fact is given much discretion in fixing these awards. When reviewing a trial court's award for loss of earning capacity, an appellate court should give deference to the trier of fact. An award of loss of future income is not based upon the difference between a plaintiff's earnings before and after a disabling injury. Rather, the award is predicated upon the difference between a plaintiff's earning capacity before and after a disabling injury.
Dennis v. The Finish Line, Inc., 99-1413 at 35-36, 781 So.2d at 40 (citations omitted).
In awarding front pay, a trial court must look to evidence of present factors to make a determination of future damages. This involves intelligent guesswork by the court. Deloach v. Delchamps, Inc., 897 F.2d 815, 822 (5th Cir.1990). Because of the speculative nature of awards of front pay, determinations of same are left to the sound discretion of the trial court. Id. The factors to be considered by the court in awarding front pay are as follows: (1) the length of prior employment; (2) the permanency of the position held; (3) the nature of the work; (4) the age and physical condition of the employee; (5) possible consolidation of jobs; and (6) the myriad of other non-discriminatory factors that could have an affect on the employee-employer relationship. Reneau v. Wayne Griffin & Sons, Inc., 945 F.2d 869, 871 (5th Cir.1991).
As to the length of front pay to be awarded, there is great disparity among the United States Circuit Courts of Appeal. Some courts have upheld awards of up to five years of front pay, while many courts have awarded amounts for only up to three years. See, e.g. Deloach v. Delchamps, Inc., 897 F.2d at 822 (five-year award of front pay appropriate); Dominic v. Consolidated Edison Company of New York, Inc., 822 F.2d 1249 (2d Cir.1987) (two years of front pay warranted); Snow v. Pillsbury Co., 650 F.Supp. 299 (D.Minn. 1986) (three-year award of front pay appropriate); Reeder-Baker v. Lincoln National Corporation, 649 F.Supp. 647 (N.D.Ind.1986), affirmed, 834 F.2d 1373 (7th Cir.1987) (two-year award of front pay upheld). Still other courts have awarded front pay for a period of ten years or more. See, e.g. Gotthardt v. National Railroad Passenger Corporation, 191 F.3d 1148 (9th Cir.1999) (eleven-year front pay award appropriate); Padilla v. Metro-North Commuter Railroad, 92 F.3d 117 (2d Cir.1996) (front pay award of over twenty years appropriate under unique circumstances of case); Hukkanen v. International Union of Operating Engineers, Hoisting & Portable Local No. 101, 3 F.3d 281 (8th Cir.1993) (ten years of front pay warranted); Tyler v. Bethlehem Steel Corporation, 958 F.2d 1176 (2d Cir.1992), 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) (front pay award for seventeen years, work life expectancy of plaintiff, was appropriate). Nonetheless, regardless of the length of a front pay award, courts have consistently held that a front pay award is designed to be a "prospective make-whole remedy" that must be left to the sound discretion of the trial court. Deloach v. Delchamps, Inc., 897 F.2d at 822.
In its reasons for judgment, the trial court noted as follows:

*863 Dr. Richardson testified that the present value of Mr. [Williams'] projected post-trial income loss is $525,529.00 through retirement at age sixty[-]one. Dr. Richardson based this opinion on the disparity between Mr. [Williams'] projected future income as an employee of Rubicon and his projected future income as an employee of Earl K. Long. In reaching this conclusion, Dr. Richardson found that Mr. Williams will continue to sustain the differential between his hospital employment and his former job at Rubicon for the rest of his work life. Additionally, Dr. Richardson took into account Mr. [Williams'] age (he is now forty seven) and the fact that Mr. [Williams'] employment opportunities in his field of expertise have been significantly diminished due to his termination from Rubicon for an ethical violation. Dr. Richardson['s] valuations were premised ultimately on his reasonable belief that Mr. Williams will probably never be able to recapture the salary increases that he had acquired through sixteen (16) years of exemplary service at Rubicon.
The trial court further concluded:
[I]t is reasonable to suspect that the circumstances of [Mr. Williams'] discharge from Rubicon would have adversely impacted his ability to gain employment at Formosa (or any other major industrial company) and will continue to impede his ability to find comparable employment in the future. Assuming Mr. Williams was able to find such employment, there is little doubt that his upward mobility and salary within the company would be substantially and adversely affected by his inauspicious discharge from Rubicon.
Initially, we agree with the trial court's finding that Mr. Williams' termination from Rubicon will continue to impede his ability to obtain comparable employment. Moreover, we are satisfied that the trial court's reliance on Dr. Richardson's calculations was not manifestly erroneous. We note, however, that there is a discrepancy in the trial court's front pay award when compared to Dr. Richardson's report. In his January 6, 1998 report, Dr. Richardson describes his "Method of Comparison" as follows:
Estimates of monetary damages are based on the comparison of the estimated earnings of Mr. Williams working at Rubicon, Inc. to the estimated earnings of Mr. Williams working at Earl K. Long Hospital which suggests what Mr. Williams has been able to find since his termination by Rubicon, Inc. These comparisons are continued until Mr. Williams has reached either the age of 65, or his normal worklife expectancy... or after a ten[-]year time horizon. Earnings will include his reported earnings based on tax returns and W-2's, including overtime and bonuses earned, and the associated benefits with his employment.
Dr. Richardson continues, summarizing estimates of Mr. Williams' front pay as follows: (1) ten-year time horizon $335,226.00; (2) normal work life expectancy, which was determined to be age 61 for Mr. Williams$419,092.00; and (3) retirement at age of 65$525,529.00.
As previously indicated, the trial court referred to Dr. Richardson's calculations of the present value of Mr. Williams' projected post-trial income loss as being "$525,529.00 through retirement at age sixty[-]one." While the trial court indicated Mr. Williams' front pay award was through retirement at age 61, the $525,529.00 award actually represents Dr. Richardson's front pay estimate through retirement at age 65. Based on our review of the trial court's reasons for judgment, *864 we are satisfied that the trial court intended to award Mr. Williams front pay through retirement at' age 65. The trial court made very specific findings concerning how Mr. Williams' termination from Rubicon will adversely impact his ability to find comparable employment in the future. Further, the court recognized that even if Mr. Williams was able to find such employment, his "upward mobility and salary within the company would be substantially and adversely affected by his inauspicious discharge from Rubicon." The trial court agreed with Dr. Richardson's finding that Mr. Williams would "probably never be able to recapture the salary increases that he had acquired through sixteen (16) years of exemplary service at Rubicon." Thus, although a front pay award of 18 years seems generous, it is warranted based on the unique circumstances of this case. Accordingly, we affirm the trial court's award of $525,529.00 in front pay through retirement at age 65.
With regard to the prejudgment interest awarded on the front pay award, it is well settled that prejudgment interest may not be awarded with respect to future damages. Williams v. Reading & Bates Drilling Co., 750 F.2d 487, 491 (5th Cir.1985). An award of prejudgment interest is compensatory in nature and serves to compensate a plaintiff for the loss of the use of the money that the plaintiff would have otherwise earned had he not been unjustly discharged. Booker v. Taylor Milk Company, Inc., 64 F.3d 860, 868 (3d Cir.1995). Thus, prejudgment interest may be recovered only on damages accrued as of the date of the judgment. Accordingly, we amend the trial court's judgment to award prejudgment interest on only $254,834.00 of the total damage award, an amount that represents $127,417.00 in back pay and $127,417.00 in liquidated damages. Otherwise, we find these assignments of error are without merit.

MR. WILLIAMS' APPEAL
In answering the appeal by Rubicon, Mr. Williams assigned error to the trial court's refusal to award legal interest from the date the suit was initially filed and the trial court's failure to award compensatory damages for mental anguish, embarrassment, and humiliation.

Legal Interest
When Mr. Williams initially filed suit against Rubicon in July of 1995, he alleged defamation, intentional infliction of mental distress, and discrimination on the grounds of disability. Thereafter, on November 22, 1996, in response to a motion for summary judgment filed by Rubicon, Mr. Williams filed an opposition, wherein Mr. Williams expressed, for the first time, his intent to proceed under the FMLA. Subsequently, when the matter proceeded to trial, Mr. Williams stipulated that he would only pursue his claim for wrongful termination under the FMLA. In a judgment dated June 7, 2000, the trial court ordered that legal interest on Mr. Williams' damage award was to run from November 22, 1996, the date the FMLA claim was formally initiated. Mr. Williams filed a motion for new trial, arguing that legal interest on his damage award should have run from the date the suit was originally filed, July 21, 1995. The trial court denied this motion, finding that Mr. Williams did not intend to assert the FMLA claim at the time the petition was initially filed.
In written reasons for judgment rendered on July 6, 2000, the trial court noted as follows:
In the instant case, it is undisputed that the plaintiff's petition dated July 21, 1995 does not expressly assert a claim under the FMLA. More importantly, the *865 petition does not plead sufficient facts to allow recovery under the FMLA. For instance, the petition does not assert that the plaintiff was denied leave, that Rubicon, Inc. is subject to a claim for relief under the FMLA, or that the plaintiff is a member of the class of employees entitled to recovery under that statute. On the contrary, the petition makes no mention of the FMLA.... (p. 142-143)
Based on our review of the record in its entirety, we find no error in the trial court's finding in this regard. Mr. Williams' petition was completely devoid of any mention of the FMLA. Rather, his petition raises various causes of action for discrimination based on disability. It was not until he filed an opposition to Rubicon's motion for summary judgment that Mr. Williams indicated his intent to pursue the FMLA claim. Thus, the trial court's award of legal interest from November 22, 1996, on Mr. Williams' damage award was proper. This assignment of error is without merit.

Compensatory Damages
In support of his argument that compensatory damages for mental anguish, embarrassment, and humiliation were warranted in this case, Mr. Williams argues that Rubicon's violation of the FMLA was a tort under La. Civ.Code art. 2315. Mr. Williams concedes that no court has ever awarded mental anguish damages based on the theory that a violation of the FMLA is a tort. He argues, however, that this is an appropriate case for such an award given the reckless nature of Rubicon's conduct.
Damages available pursuant to the FMLA are specifically limited to (1) compensatory damages equal to the amount of any wages, salary, employment benefits, or other compensation that was denied or lost by reason of the FMLA violation; (2) interest on the compensatory damages; and, under certain circumstances, (3) liquidated damages. 29 U.S.C. § 2617(a)(1)(A). In addition, a prevailing plaintiff may obtain "such equitable relief as may be appropriate, including employment, reinstatement, and promotion," as well as reasonable attorney fees and costs. 29 U.S.C. § 2617(a)(1)(B) and (a)(3). Thus, by its own terms, the FMLA does not provide for damages for mental anguish. Mr. Williams stipulated prior to the beginning of trial that his case would focus strictly on the FMLA. Further, Mr. Williams has been unable to provide any legal basis or support for his claim for mental anguish damages. Accordingly, this assignment of error is without merit.

MR. WILLIAMS' MOTION TO STRIKE PORTIONS OF RUBICON'S BRIEF
In response to Rubicon's brief on appeal, Mr. Williams filed a motion to strike certain matters from the brief. Mr. Williams argued in this motion that Rubicon had falsely accused him of "knowing concealment" of discovery documents, mislead the trial court concerning Dr. Richardson's expert report, and improperly argued evidence that was not introduced into evidence at the original trial. In an order previously issued by this court, this motion was referred to the merits. Based on our review of the record, and for the following reasons, the motion is denied in part and granted in part.
The motion to strike is denied insofar as it refers to the evidence concerning Dr. Richardson's reports. It is apparent from the record that Dr. Richardson provided two separate reports in this case. His initial report is dated December 9, 1997, and, over an objection by Mr. Williams, was introduced at trial as D-16. *866 According to statements made by Mr. Williams' counsel at the beginning of trial, this report was, in fact, a draft submitted to opposing counsel during discovery in an attempt to reach a stipulation regarding the admission of expert reports. Counsel for Rubicon indicated that its expert had relied on Dr. Richardson's December 9, 1997 report in reviewing Mr. Williams' damages and requested that the report be introduced into evidence. On appeal, Rubicon attempts to portray this December 9, 1997 report as "the expert report" of Mr. Williams' expert and criticizes both the report and the trial court's acceptance of unsupported lost earnings figures. Nonetheless, we note that Dr. Richardson's second report, dated January 6, 1998, was also introduced into evidence as P-18. As explained by counsel for Mr. Williams, this report was Dr. Richardson's final report, and was clearly the report relied on by the trial court in determining Mr. Williams' damages. However, because Dr. Richardson's December 9, 1997 report was properly introduced at trial, there is no problem with Rubicon referring to same in its appeal. Thus, any statements concerning the December 9, 1997 report need not be stricken from Rubicon's brief.
The motion to strike is granted as it relates to the remaining two issues. Rubicon argues on appeal that Mr. Williams was required to supplement his responses to prior discovery, wherein Mr. Williams had provided only four job applications that he had mailed out during his search for employment. Rubicon is apparently referring to the fact that at trial, Mr. Williams indicated that he had sent out "at least 30 applications" for employment since his discharge from Rubicon. Rubicon contends that Mr. Williams'"failure to provide Defendants with any additional application letters clearly rises to the level of knowing concealment." A review of the record reveals that both Mr. Williams and his wife testified at trial about the extensive job search that Mr. Williams undertook following his termination from Rubicon. This testimony was elicited and introduced without objection by Rubicon. Thus, any objection Rubicon had to this testimony was effectively waived. Accordingly, the portions of Rubicon's brief concerning this issue are ordered stricken from the record.
Finally, the motion is also granted as it relates to Mr. Williams' contention that Rubicon improperly submitted evidence to the trial court and to this court that was never introduced into evidence at the original trial. Mr. Williams questions Rubicon's assertion that it had hired 12 lab technicians since Mr. Williams' termination from Rubicon. Mr. Williams correctly points out that no such evidence was introduced at the trial of this matter. Further, Mr. Williams challenges Rubicon's attempt to influence the trial court by submitting new evidence on remand despite the court's ruling that the remand would be based solely on the evidence introduced at trial. Attached to Rubicon's brief regarding damages on remand was a letter concerning the wage rates and progression system for lab technicians at the Formosa Plastics plant. It is clear from the record that said letter was never introduced into evidence at the original trial of this matter. Thus, the letter was not properly before the trial court on remand or this court on appeal. Accordingly, we conclude that any statements concerning these issues should be stricken from Rubicon's brief.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is amended to reflect an award of prejudgment interest on only $254,834.00 of the total damage award, an amount that represents $127,417.00 in back pay and $127,417.00 in *867 liquidated damages. On the balance of the trial court damage award, legal interest shall accrue from the date of judgment until paid. In all other respects, the trial court's judgment is affirmed. Moreover, the motion to strike is granted in part, in accordance with the court's findings. All costs associated with this appeal are assessed against defendants-appellants, Rubicon, Inc. and Len Sanford.
AMENDED IN PART, AND AS AMENDED, AFFIRMED. MOTION TO STRIKE GRANTED IN PART, DENIED IN PART.
KLINE, J., agrees and assigns additional reasons.
KLINE, J., agrees and assigns additional reasons.
I comment only to address defendant's strenuous argument that the "front pay" award until retirement age was without jurisprudential precedent in FMLA cases and is therefore excessive. Defendants further urge that the jurisprudence which reviewed front pay awards in age discrimination and civil rights discrimination cases is not sufficiently analogous to be authoritative. An award of "front pay" has its basis, in these type violations, in the language of each statute authorizing courts to award a successful claimant "equitable relief." See 29 U.S.C. 626(b); 29 U.S.C. 2617(a)(1)(B); 42 U.S.C.2000e-5(g)(1). The statutory language authorizing equitable relief has been specifically held to be a broad grant of remedial authority allowing judges to fashion remedies designed to ensure that victims are made whole; such authority extends to front pay, in appropriate circumstances. Whittlesey v. Union Carbide Corp., 742 F.2d 724 (2nd Cir. 1984). See also Gibson v. Mohawk Rubber Co., 695 F.2d 1093 (8th Cir.1982). The award must be done on a case-by-case basis, and therefore, I agree that front pay until retirement is an appropriate award under the facts of this case and does not constitute an abuse of discretion.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The facts leading up to Mr. Williams' termination from Rubicon and the procedural history of this case are reported in detail in our previous opinion in this matter, Williams v. Rubicon, 98-1743 (La.App. 1 Cir. 9/24/99), 754 So.2d 1081, writ denied, 99-3059 (La.1/7/00), 752 So.2d 864.
[3] While Rubicon characterizes the trial court's front pay award as over 20 years, we note that according to the record, the front pay award was actually for a period of 18 years.